IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

ILATTA F. SATEPEAHTAW,[1]  )
                              )
      Plaintiff,         )
                              )
                              )    CIV-14-940-D
v.                            )
                              )
CAROLYN W. COLVIN,   )
  Acting Commissioner of Social  )
  Security Administration,      )
                              )
      Defendant.       )

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her applications for disability insurance and supplemental security income benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

In October 2011, when she was 47 years old, Plaintiff applied for benefits and alleged

---

[1] Plaintiff filed her applications under the last name of "Glaze," but Plaintiff identified her last name as "Satepeahtaw" at the administrative hearing. (TR 36, 118, 120).

that she became disabled on August 1, 2009. (TR 118, 120). Plaintiff stated she stopped working on August 1, 2009. (TR 167). However, her earnings record reflects no earnings after 2007. (TR 136). Plaintiff alleged she was unable to work due to diabetes and arthritis.[2] (TR 167). Plaintiff has a high school equivalency education and previous work as a nursing home aide. (TR 168). For the purpose of Title II benefits, the agency determined that Plaintiff was no longer insured for benefits after June 30, 2011. (TR 189).

The record shows Plaintiff was treated by Dr. Harris from March 2008 through November 2011 for diabetes and various minor conditions such as sinusitis and back strain. Plaintiff was treated by Dr. Reid beginning in November 2011 for a variety of conditions, including "chronic pain syndrome," cirrhosis of the liver, hepatic enlargement, Type II diabetes, "autoimmune disease," and vitamin deficiency.

In March 2012, Dr. Reid completed a "Medical Opinion Regarding Residual Functional Capacity," in which the physician stated that Plaintiff was capable of standing and walking less than 2 hours a day, sitting less than 2 hours a day, lifting 10 pounds occasionally and less than 10 pounds frequently, and she would be absent more than three days a month due to her treatment or impairments. (TR 399). Dr. Reid opined that these limitations had lasted for 3 years. (TR 399).

In November 2012, Dr. Reid noted that Plaintiff "has chronic pain and can be very

---

[2]Plaintiff also listed "back pain" as a condition that limited her ability to work (TR 167), and in her Opening Brief Plaintiff asserted she had been treated for "medical conditions" that included pain in her knee, shoulder, back, right side, and right hip. However, pain is a symptom, not an impairment.

2

demanding for Lortab," a narcotic pain medication, but she was "doing well" on non-narcotic pain medications. (TR 539). X-rays of Plaintiff's lumbar spine, sacrum, and coccyx conducted in March 2012 were interpreted as normal and showing no degenerative changes, although the x-rays showed a partial fusion at two levels of her lumbar spine that was noted to be "most likely a congenital basis." (TR 547-548). An x-ray of Plaintiff's right wrist conducted in April 2012 was interpreted as normal and showing no degenerative changes. (TR 550). X-rays of Plaintiff's shoulders, right hip, and left upper arm conducted in August 2012 were interpreted as normal and showing no degenerative changes. (TR 551-554).

In December 2011, Plaintiff underwent a consultative physical examination conducted by Dr. Ostrander. (TR 299-301). Plaintiff stated that she had not worked for four years and that she spent her days sleeping, cooking, and cleaning. (TR 299). A physical examination was reported to be normal except for some reduced right shoulder abduction due to pain, some edema in Plaintiff's ankles, and some instability in heel and toe walking. (TR 300-301).

In February 2012, Plaintiff went to a hospital emergency room and complained of dizziness, vomiting blood, and repetitive nose bleeds for the previous three weeks. (TR 341). The examining physician noted Plaintiff had a history of alcoholism and "use[d] alcohol heavily." (TR 341). She was transferred to University of Oklahoma Medical Center ("OUMC") for further treatment because she was unstable and her lab testing showed abnormal liver enzymes. At OUMC, Plaintiff underwent endoscopy testing, and the diagnosis was grade I esophageal varices, reflux espohagitis, gastric ulcer, erosive

gastropathy, and anemia. It was noted that Plaintiff's gastropathy was probably due to alcohol abuse. (TR 355-356). At that time, Plaintiff reported she was taking a daily diabetes medication and an anti-inflammatory medication for arthritis about three times per week. (TR 351). An abdominal ultrasound showed evidence of cirrhosis of the liver. (TR 380). Plaintiff was discharged three days later in stable condition. (TR 381).

Plaintiff returned to OUMC in October 2012 and again in December 2012 for follow-up treatment. The examining physician noted Plaintiff's cirrhosis was "presumptive[ly alcohol] related." (TR 567, 575). She did not exhibit lower extremity swelling, and she was advised to continue the medication prescribed for her esophageal varices. (TR 567, 574-575).

Plaintiff testified at an administrative hearing conducted on January 25, 2013, before Administrative Law Judge Baldwin ("ALJ"). (TR 34-47). A vocational expert ("VE") also testified at the hearing.

II. ALJ's Decision

In a decision entered on February 22, 2013, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. Following the agency's well-established sequential evaluation procedure, the ALJ found that Plaintiff had severe impairments due to cirrhosis of the liver, "lupus/arthritis/auto immune disorder," vitamin D deficiency, hepatic encephalopathy, "chronic pain syndrome," and diabetes mellitus. (TR 21). After considering the medical evidence in the record and Plaintiff's testimony, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform less than a full

4

range of light work. She could occasionally lift and carry 10 pounds, frequently lift and carry less than 10 pounds, stand and/or walk for two hours in an 8-hour workday, sit for six hours in an 8-hour workday, occasionally engage in pushing and/or pulling including the operation of hand/foot controls, occasionally climb ramps and stairs, and occasionally crouch, but never climb ladders, ropes, or scaffolds or crawl. (TR 22).

Based on this RFC for work and Plaintiff's vocational history as well as the VE's testimony at the hearing, the ALJ found that Plaintiff was capable of performing jobs available in the economy, including the jobs of charge account clerk, food and beverage order clerk, or addresser. In light of these findings, the ALJ concluded that Plaintiff was not entitled to benefits. The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

III. General Legal Standards Guiding Judicial Review

The Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that

5

evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

The Social Security Act authorizes payment of benefits to an individual with disabilities. 42 U.S.C. § 401 *et seq*. A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord, 42 U.S.C. § 1382c(a)(3)(A); see 20 C.F.R. § 416.909 (duration requirement). Both the "impairment" and the "inability" must be expected to last not less than twelve months. Barnhart v. Walton, 535 U.S. 212 (2002).

Plaintiff's insured status for the purpose of Title II disability insurance benefits expired on June 30, 2011. Consequently, to be entitled to receive disability insurance benefits, Plaintiff must show that he was "actually disabled [within the meaning of the Social Security Act] prior to the expiration of his insured status" on . Potter v. Secretary of Health & Human Servs., 905 F.2d 1346, 1349 (10th Cir. 1990)(*per curiam*); accord, Adams v. Chater, 93 F.2d 712, 714 (10th Cir. 1996); Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 360 (10th Cir. 1993).

IV. Medical Source Statements

Plaintiff contends that the ALJ erred in evaluating the medical source statement of her treating physician, Dr. Reid, and also erred in evaluating the medical opinion of the consultative physical examiner, Dr. Ostrander.

Generally, a treating physician's opinion is entitled to controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques. Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting Social Security Ruling 96-2p, 1996 WL 374188, at *2).  However, "[m]edical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence." Pisciotta v. Astrue, 500 F.3d 1074, 1078 (10th Cir. 2007)(internal quotation marks omitted).  When an ALJ finds that a treating physician's opinion is not entitled to controlling weight, the ALJ must decide "whether the opinion should be rejected altogether or assigned some lesser weight." Id. at 1077.

"Treating source medical opinions not entitled to controlling weight 'are still entitled to deference' and must be evaluated in light of the factors in the relevant regulations, 20 C.F.R. §§ 404.1527 and 416.927." Newbold v. Colvin, 718 F.3d. 1257, 1265 (10th Cir. 2013)(quoting Watkins, 350 F.3d at 1300).

In the ALJ's decision, the ALJ recognized that Plaintiff had been treated by Dr. Reid and summarized Dr. Reid's treatment notes. (TR 23).  The ALJ also summarized the relevant medical evidence in the record, including the office notes of Dr. Harris's treatment of Plaintiff, the report of Dr. Ostrander concerning his consultative physical examination of Plaintiff, the report of the physician who examined Plaintiff at a hospital on February 24, 2012, and the opinions of the state agency medical consultants. Although Plaintiff complains the ALJ did not expressly recognize that Dr. Reid was a treating physician, the ALJ obviously considered Dr. Reid to be a treating physician as the ALJ summarized the physician's office notes of treatment of Plaintiff and also considered Dr. Reid's opinion

7

concerning Plaintiff's functional limitations set forth in his medical source statement dated March 15, 2012. (TR 23-24).

The ALJ concluded with respect to Dr. Reid's medical source statement that "the conclusions of Dr. Reid regarding the claimant's physical restrictions are not supported by the credible evidence of record. The claimant's impairments do not limit the claimant to the extent found by Dr. Reid. The [ALJ] therefore assigns little credibility to the findings of Dr. Reid concerning the claimant's ability to stand, sit, lift, and carry." (TR 24).

Plaintiff argues that the ALJ's decision does not explain whether he rejected the physician's opinion, as required by the first step of the required analysis of a treating physician's opinion, or what weight he gave to the opinion, as required by the second step of the required analysis.

However, the ALJ thoroughly discussed the medical evidence in the record and determined that Dr. Reid's opinion was not entitled to controlling weight because it was not consistent with the objective medical evidence in the record, including Dr. Reid's own office notes. For the same reasons, the ALJ found that the opinion was entitled to only little weight. In summarizing the objective medical evidence, the ALJ appropriately reasoned that Plaintiff's physical examinations had not indicated the presence of significantly limited ranges of movement in any joint, the presence of strength limitations or significant manipulative limitations, or anything more than a minimally abnormal gait. The ALJ went on to discuss the x-rays of Plaintiff's back, wrist, and hand and noted the x-rays did not indicate any abnormalities.

The ALJ's decision reflects the ALJ's finding that Dr. Reid's opinions set forth in his medical source statement were simply not supported by the objective medical evidence in the record. As the Tenth Circuit Court of Appeals recently stated in an unpublished decision, "[t]he lack of affirmative support in the medical record is a legitimate consideration at both steps of [the] treating physician analysis." Jones v. Colvin, __ Fed. App'x. __, 2015 WL 1948467 (10th Cir. 2015)(unpublished op.). No error occurred with respect to the ALJ's evaluation of Dr. Reid's medical opinion set forth in his medical source statement.

Plaintiff next contends that the ALJ erred in evaluating the opinion of the consultative physical examiner, Dr. Ostrander. The only "opinion" to which Plaintiff refers is a notation in Dr. Ostrander's report that Plaintiff's ability to manipulate small objects was decreased due to neuropathy and she had occasional "stocking" and intermittent "glove" sensory loss. (TR 304-305).

Dr. Ostrander's report of his consultative examination of Plaintiff does not set forth any opinion concerning Plaintiff's functional limitations. Moreover, the ALJ's decision reflects that the ALJ considered the examination findings set forth in Dr. Ostrander's report. (TR 22-23, 300-301). The ALJ was not required to further discuss these examination findings under the treating physician rule. It appears that Dr. Ostrander's manipulative and sensory loss notations were based entirely on Plaintiff's own subjective statements as Dr. Ostrander noted Plaintiff "report[s] occasional paresthesias with decreased sensation and tingling of her hands and feet in a glove like pattern," although she exhibited normal grip strength and "good coordination of her upper extremities with normal apposition of her

9

thumb to her fingers." (TR 301). The ALJ did not err in evaluating Dr. Ostrander's report of his consultative examination of Plaintiff.

V. Credibility

Plaintiff next contends that the ALJ erred in assessing her credibility. In the ALJ's decision, the ALJ properly recognized that he was required to consider Plaintiff's credibility "based on a consideration of the entire case record." (TR 25).

"A claimant's subjective allegation of pain is not sufficient in itself to establish disability." Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993). Instead, "[b]efore the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain." Id. The relevant procedure requires the ALJ to consider and determine (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is at least a "loose nexus" between that impairment and the claimant's subjective allegations of pain; and (3) if so, whether, considering all of the evidence, both objective and subjective, the claimant's pain was in fact disabling. Luna v. Bowen, 834 F.2d 161, 163-164 (10th Cir. 1987).

To find that a claimant's pain is disabling, the "pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." Brown v. Bowen, 801 F.2d 361, 362-363 (10th Cir. 1986)(internal quotation omitted). "Subjective complaints of pain must be evaluated in light of plaintiff's credibility and the

medical evidence." Ellison v. Secretary of Health & Human Servs., 929 F.2d 534, 537 (10th Cir. 1990).

In assessing the credibility of a subjective allegation of disabling pain, the ALJ must consider such factors as

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Hargis v. Sullivan, 945 F.2d 1482, 1489 (10th Cir. 1991); see Luna, 834 F.2d at 165-166; 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3)(listing seven factors relevant to credibility analysis); Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at * 3 (same).

In this case, the ALJ found that Plaintiff had medically-determinable impairments that could reasonably be expected to cause pain and discomfort. The ALJ then identified eleven reasons to support his finding that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of her symptoms are not entirely credible. . . ." (TR 25).

As one of the reasons for discounting Plaintiff's credibility, the ALJ reasoned that Plaintiff's diabetes was controlled by medication but the record repeatedly showed she had not been compliant with her medication. Plaintiff argues that the ALJ erred in relying on her noncompliance with prescribed treatment because the ALJ did not undertake the analysis

11

required by Frey v. Bowen, 816 F.2d 508, 517 (10th Cir. 1987), and first determine whether Plaintiff's compliance would have restored her ability to work.

However, as the Tenth Circuit Court of Appeals recognized in Qualls v. Apfel, 206 F.3d 1368 (10th Cir. 2000), the Frey analysis is required only when noncompliance is cited as the exclusive reason for denying benefits. In this case, the ALJ did not rely only on Plaintiff's noncompliance to support the decision. Rather, the ALJ cited multiple reasons for discounting Plaintiff's credibility. Thus, the ALJ did not err in considering Dr. Harris's office notes of his treatment of Plaintiff, including his notations that Plaintiff had been noncompliant with prescribed treatment. See Anderson v. Colvin, 541 Fed. App'x. 842, 847 (10th Cir. 2013)(unpublished op.)(noting that ALJ's credibility decision was supported by substantial evidence in the record on which the ALJ relied, including "the fact that Mr. Anderson was not always compliant with his doctors' recommendations").

Plaintiff's remaining arguments are directed toward discrete references in the sparse medical record and reflect a desire for this Court to reevaluate the evidence. This the Court cannot do. In this case, there is substantial evidence in the record to support the ALJ's credibility findings. As the ALJ found, the objective medical record simply does not support Plaintiff's allegation of disabling pain and limitations. X-rays of Plaintiff's shoulders, back, right hip, left arm, and right wrist have not shown significant abnormalities or degenerative changes. Physical examinations have not shown persistent limitations of movement in Plaintiff's joints or back. Her treating physicians have prescribed pain and anti-inflammatory medications but no other treatment for her pain symptoms.

Moreover, Plaintiff's testimony concerning the severity of her symptoms was vague. She "drop[s] a lot of stuff," she has back pain if she sits "too long," her arms hurt if she tries "to get something off from a shelf," and her feet "hurt" and "swell really big" if she "stand[s] on them for too long." (TR 40-42). Her treating doctor has noted that she was doing well on non-narcotic pain medications. The ALJ did not misstate the record concerning the examination findings in Dr. Ostrander's report that Plaintiff exhibited "5/5 grip strength and full bilateral hand manipulative ability." (TR 25, 300-301). The ALJ did not err in evaluating the credibility of Plaintiff's pain complaints.

## VI. Step Five

Lastly, Plaintiff contends that the ALJ failed to satisfy the burden of proof at step five of the requisite sequential evaluation procedure. Although Plaintiff couches her argument in terms of the ALJ's hypothetical questioning of the VE at the administrative hearing, Plaintiff's argument is directed toward the ALJ's step four RFC finding. Plaintiff asserts that the ALJ should have found she was limited in her ability to manipulate small objects and use her right shoulder and that she had "occasional stocking and intermittent glove sensory loss." These statements, as Plaintiff suggests, are culled from Dr. Ostrander's report of his consultative examination of Plaintiff.

But Dr. Ostrander's findings with respect to his one-time physical examination of Plaintiff reflect Plaintiff exhibited normal arm, leg, and grip strength, and only a slight decrease in right shoulder movement due to a subjective assertion of "pain." (TR 300-301, 303). The notation in Dr. Ostrander's report that she had sensory loss was solely based on

13

Plaintiff's subjective "report." (TR 301, 305). Dr. Ostrander stated that Plaintiff had a "decreased" ability to manipulate small objects, again based entirely on Plaintiff's subjective statements. Dr. Ostrander found that on examination Plaintiff "had good coordination of her upper extremities with normal apposition of her thumb to her fingers." (TR 301). Moreover, there was no other evidence in the record to support such a limitation. Plaintiff also relies on Dr. Reid's medical source opinion, which was previously found to have been properly discounted. The ALJ's RFC finding is well supported by the objective medical evidence in the record.

The ALJ appropriately elicited vocational testimony concerning the availability of jobs for an individual with Plaintiff's vocational history and RFC for work. The VE's testimony provides substantial evidence to support the ALJ's step five finding of nondisability, and the Commissioner's decision should be affirmed.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before __September 29th__, 2015, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed

waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this \_\_\_\_9th\_\_\_\_ day of \_\_\_\_September\_\_\_\_, 2015.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE